UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                Criminal No. 91-CR-50013-01

vs.                                        HON. BERNARD A. FRIEDMAN

EDWARD OMAR SPEARMAN,

    Defendant.
_____/

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO REDUCE SENTENCE

This matter is presently before the Court on defendant's pro se "motion to impose a reduced sentence" [docket entry 527]. Plaintiff has filed a response and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall deny the motion.

In September 1995, defendant was charged by way of a second superseding indictment with nine drug- and firearm-related offenses. In February 1996, after a month-long trial, a jury found him guilty on the following charges: participation in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (Count One); two counts of drug-related murder, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 (Counts Three and Four); two counts of firearm use during a felony drug offense, in violation of 18 U.S.C. § 924(c) (Counts Five and Eight); dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A (Count Six)); and conspiracy to provide false statements with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6) (Count Seven). The jury also found defendant guilty of conspiracy to distribute cocaine, but the government dismissed that charge before sentencing. The jury found

defendant not guilty of possession of cocaine.

At the sentencing hearing in June 1996, the Court made the following comments:

> Mr. Spearman, your offenses are of a particularly serious nature. You've exhibited no concern at all for human life. You're obviously an extremely violent person. You have been involved, yourself, as a leader in a continuing criminal enterprise. I think really you sort of glorified in the fact that you are a leader in a criminal operation in the crime scene here in this community.
>
> \* \* \*
>
> [A]s I go through the record, I refer to some of my recollection of some of the testimony involving violent instances in which you were involved that aren't even part of the presentence report here. The shooting incidents which led to your conviction on Counts Three and Four, that is Count Three being the murder of Wakeem [sic] Parker, Penny Farett (phonetic) was particularly horrible. There was testimony in the case that there were 18 bullet holes, including ingress and egress holes in the body of Wakeem [sic] Parker and that there were two 9mm or two 10mm rounds in him. Penny Farett had three holes in her body; two in her back, included [sic] a 10mm round inside her. In addition, of course, there was the attempt to kill the third person in the automobile on that occasion, fortunately she survived and was able to present the eyewitness identification of yourself as being one of the shooters that committed these despicable acts.
>
> \* \* \*
>
> I also have reviewed the testimony of Mr. Duranso who was your cell mate while you were awaiting trial in this matter, who testified that you were surprised that June Armour had lived because your gun makes such big holes in people.
>
> \* \* \*
>
> You were involved in operating a continuing criminal enterprise which involved the sale of large amounts of crack cocaine, also convicted of dealing firearms without a license and using firearms during drug offenses. You are responsible for two murders, drug related murders. The guidelines require the Court [to] impose life sentences in this matter. The Court's also required

>to impose consecutive sentences for the use of a firearm in, a gun in a drug offense conviction. And I must say that the severity of the sentences, I think, is well deserved by your conduct and your record.

Sentencing Tr. at 36-39.

The Court sentenced defendant to life imprisonment on Count One (engaging in a continuing criminal enterprise) and Counts Three and Four (drug-related murder of Joaquin Parker and Penny Farett). The Court also sentenced defendant to a consecutive five-year prison term on Count Five (use of a firearm during a felony drug offense) and to concurrent five-year prison terms on Count Six (dealing in firearms without a license) and Count Seven (conspiracy to provide false statements in connection with acquisition of firearms). On Count Eight (use of firearms during a drug felony offense) the Court sentenced defendant to a consecutive 240-month prison term.

The court of appeals affirmed defendant's conviction. *See United States v. Spearman*, No. 96-1887, 1998 WL 840870 (6th Cir. Nov. 17, 1998). That court summarized the trial testimony as follows:

>Defendant was a leader in a cocaine distribution ring in the Flint, Michigan area from 1988 to 1991. During the trial on the charges in the second superceding [sic] indictment, the Government introduced evidence to prove that Defendant organized at least ten people in a drug ring, including Marktray and Jabar Spearman, Keith Rushing, Bennie Williams, Colby/Coby Rushing, Mildred Kilgore, Toye Campbell, Mama Jack, and two unidentified persons who helped Defendant commit murder. The Government also introduced evidence showing that Defendant identified himself as the cocaine ring leader in a taped phone call on March 17, 1995. Additionally, the Government provided evidence that Defendant's associates, Mama Jack and Jerome Barfield, identified Defendant as the "ring leader."
>
>The Government also introduced numerous facts about

Defendant's participation in the sale and distribution of cocaine during the trial on the charges in the second superceding [sic] indictment. The Government introduced evidence showing that Defendant sold five kilograms of cocaine between 1988 and 1991, an amount worth $120,000. The Government also offered proof that one of Defendant's main cocaine suppliers, Sheldon Sillman, sold Defendant nine ounces of cocaine in 1989. Several witnesses testified that Defendant paid Sillman for the cocaine at a later time. Additionally, Jody Amour, a fourteen-year-old who sold crack for another dealer, testified that Defendant and his mother sold crack out of the same crack house where she sold drugs.

The Government also introduced evidence during the trial for the charges in the second superceding [sic] indictment that was produced under a search warrant executed on Defendant's home on April 8, 1991. The search warrant evidence included crack, guns, and a handwritten essay describing Defendant's evaluation of the effectiveness of the nine-millimeter handgun as a murder weapon. Defendant waived his Miranda rights during the search, and admitted that he owned the seized guns and that he had a secret safe house for storing additional guns and drugs. Police also gathered evidence from Defendant's garbage, including drug tabulation records and a picture of Defendant with "Amerikkka's Most Wanted" scrawled across it.

The Government also provided evidence at the trial on the charges in the second superceding [sic] indictment showing that Defendant orchestrated drug-related murders. Amour testified that, in a turf battle, Defendant and two associates shot and killed Joaquin Parker, the dealer Amour worked for, and Penny Ferrett, another cocaine seller. Amour also testified that Defendant shot her several times and left her for dead. Police recovered one of the murder weapons and its storage box and found Defendant's fingerprints on both pieces of evidence. The Government also offered trial testimony from Felton Martin, a man who reneged on his promise to sell drugs for Defendant. Martin testified that Defendant tried to kill him in a street shooting on April 4, 1991. Defendant failed to shoot Martin, but he hit and permanently injured an innocent woman standing next to Martin.

The Government introduced additional proof during the trial on the charges in the second superceding [sic] indictment showing that Defendant sold and distributed firearms without a license. Toye Campbell, Jerome Barfield, and Mildred Kilgore testified

4

> that Defendant ordered them to buy guns, falsely register the weapons in their names, and give the guns to Defendant for sale. The guns Defendant sold were recovered from drug houses across the Flint, Michigan area.

*Id.* at *1-2 (footnote omitted).

In the instant motion, defendant makes essentially two arguments. First, he argues that he is entitled to relief under the First Step Act because his two § 924(c) convictions (Counts Five and Eight)[1] were impermissibly "stacked," i.e., the first requiring a mandatory five-year sentence and the second a much higher mandatory sentence. This aspect of defendant's motion is denied because the "anti-stacking" provision of the First Step Act does not apply retroactively, as this Court recently held in *United States v. Robinson*, No. 99-CR-80809-04, 2020 WL 3603688, at *3 (E.D. Mich. July 2, 2020) (stating that "[t]he Court has no authority to modify a sentence except as permitted by the First Step Act (or other authority not applicable here), and Congress has specifically indicated that this 'anti-stacking' provision of the Act may not be applied retroactively"). As noted, defendant was sentenced in 1996, long before the First Step Act was enacted in December 2018. Further, the harsher sentence defendant received on Count Eight was proper under the law that was in effect when defendant was sentenced. *See Deal v. United States*, 508 U.S. 129 (1993).

Although it is not entirely clear, defendant's second argument appears to be that he is entitled to relief under the First Step Act because the life sentence he received on Count One for participating in a continuing criminal enterprise ("CCE") was based on crack cocaine

---

[1] Count Five concerned defendant's use of firearms to murder Parker and Ferrett in January 1991. Count Eight concerned his use of firearms in an attempted murder in April 1991. *See* Sentencing Tr. at 40; *United States v. Spearman*, No. 96-1887, 1998 WL 840870, at *2 (6th Cir. Nov. 17, 1998).

5

quantities that were changed by the Fair Sentencing Act and made retroactive by the First Step Act. The CCE statute, 21 U.S.C. § 848(b), states in relevant part that the Court must impose a life sentence if defendant (1) "is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders," and (2) the underlying drug crime "involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title." The quantity of crack cocaine "described in subsection 841(b)(1)(B) of this title" was increased by the Fair Sentencing Act from five grams to twenty-eight grams. Therefore, at the time defendant was sentenced, a life term was mandatory for a leader of a CCE that distributed at least 1,500 grams of crack cocaine, but now a life term is not required unless the CCE distributed at least 8,400 grams. It appears from the Court's comments at the sentencing hearing that the Court, based on trial testimony, found defendant responsible for 2.27 kilograms of crack cocaine. *See* Sentencing Tr. at 30. As this quantity is less than 8.4 kilograms, defendant is no longer subject to a mandatory life sentence on the CCE charge under § 848(b), but rather a sentence of twenty years to life under § 848(a).

Even if the Court assumes that defendant is *eligible* for resentencing due to the statutory change that affects his CCE conviction, he is not *entitled* to be resentenced. As the Sixth Circuit has noted, "the First Step Act, by its plain terms, does not 'require a court to reduce any sentence.' First Step Act § 404(c), 132 Stat. at 5222. Instead, the Act commits the decision of whether to reduce a sentence to the sound discretion of district courts." *United States v. Barber*, No. 19-6116, 2020 WL 4035137, at *2 (6th Cir. July 17, 2020). In exercising this discretion, the Court must consider "the amended guidelines range at the time of

resentencing" and make a "thorough renewed consideration of the § 3553(a) factors."[2] *United*

---

[2] These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements

*States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020). Defendant's "post-sentencing behavior" may also be relevant. *Id.*

Having considered all of these factors, the Court declines to exercise its discretion to resentence defendant. As noted, defendant was convicted of committing two drug-related murders (Parker and Ferrett) in January 1991. Defendant was also convicted of another drug-related shooting in April 1991 where he attempted to kill Felton Martin, from whom defendant wanted to buy drugs, but missed Martin and hit and permanently injured an innocent bystander. Additionally, there was testimony that defendant shot and attempted to kill another victim, fourteen-year-old Jody Amour, at the same time he shot and killed Parker and Ferrett, and that

---

issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement–

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

defendant later told his cell mate he was surprised Armour had survived because his "gun makes such big holes in people." Sentencing Tr. at 38. As the Court noted at the sentencing hearing, defendant is extremely violent and has "no concern at all for human life." *Id.* at 36. The safety of the community can be ensured only by requiring defendant to serve out his life sentence.

Changes in the sentencing guidelines have little, if any relevance, in this case. Defendant was sentenced to mandatory minimum terms on his § 924(c) convictions (Counts Five and Eight). The § 922(a)(1)(A) and § 371 convictions (Counts Six and Seven) are firearms charges that have nothing to do with drug quantities; nor does defendant argue that the guidelines as to these offenses have changed or are relevant. The § 848(e)(1)(A) drug-related murder convictions (Counts Three and Four) likewise have nothing to do with drug quantities, and the statutory penalty (twenty years to life) has not been changed by the Fair Sentencing Act or the First Step Act. The only relevant change in defendant's guidelines concerns the § 848 CCE conviction (Count One), which, as noted, in defendant's case – assuming he is responsible for 2.27 kilograms of crack cocaine, as the Court found at sentencing – would now carry a mandatory twenty-year sentence instead of mandatory life. At page 31 of his motion, defendant contends that on this conviction his recalculated guideline range is 292-365 months. For present purposes, the Court accepts defendant's calculation. Nonetheless, as defendant concedes at page 32 of his motion, the guidelines for the drug-related murder convictions, which have an offense level of 43 (the highest possible), call for a sentence of life. Even if the Court were to entirely disregard defendant's § 848 conviction, defendant's guidelines on the § 848(e)(1)(A) convictions still call for a life sentence.

Defendant indicates that he has taken many classes while incarcerated, that he has

9

a good disciplinary record, that he has maintained employment as a housing orderly, that he engages positively with the prison staff, and that he has maintained contact with his family. Def.'s Mot. at 26-28. The Court has reviewed and considered defendant's prison record and compliments him on his accomplishments and his disciplinary record. The Court also notes that defendant has obtained his GED. Credit where credit is due.

Nonetheless, having considered the § 3553(a) factors, the guidelines, and defendant's post-conviction conduct, the Court concludes that the sentence previously imposed in this matter should not be reduced. The seriousness of defendant's crimes cannot be minimized. He was the leader of a criminal organization that distributed into the community a significant quantity of crack cocaine. He shot and killed two people and attempted to kill two others in furtherance of that criminal activity. The statutory penalties for his crimes have changed only as to his CCE conviction, and that conviction still carries a mandatory minimum twenty-year sentence. Similarly, the guidelines have changed only as to defendant's CCE conviction, and the guidelines for the murder convictions still call for a life sentence. As the Court noted at the time of sentencing, defendant's life sentence is "well deserved," Sentencing Tr. at 39, and it is the only sentence that will protect the community. Accordingly,

IT IS ORDERED that defendant's motion for a reduced sentence is denied.

                                                      s/Bernard A. Friedman
                                                     Bernard A. Friedman
Dated: August 1, 2020                Senior United States District Judge
      Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 1, 2020.

| | |
|---|---|
| Edward Omar Spearman, 12484-039<br>Terre Haute USP McCreary<br>Federal Correctional Institution<br>Inmate Mail/Parcels<br>P.O. BOX 33<br>TERRE HAUTE, IN 47808 | s/Johnetta M. Curry-Williams<br>Case Manager |